UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

VICKIE M. DETTLING,                    )
                                       ) No. CV-06-0106-MWL
            Plaintiff,                 )
                                       ) ORDER GRANTING DEFENDANT'S
v.                                     ) MOTION FOR SUMMARY JUDGMENT
                                       )
JO ANNE B. BARNHART,                   )
Commissioner of Social                 )
Security,                              )
                                       )
            Defendant.                 )
                                       )

    BEFORE THE COURT are the parties' cross-motions for summary

judgment. (Ct. Rec. 16, 20). The case was noted for hearing

without oral argument on October 23, 2006. (Ct. Rec. 13).

Plaintiff Vickie Dettling ("Plaintiff") filed a reply brief on

October 16, 2006.  (Ct. Rec. 22).  Attorney Kenneth L. Isserlis

represents Plaintiff; Special Assistant United States Attorney

David R. Johnson represents the Commissioner of Social Security

("Commissioner").  The parties have consented to proceed before a

magistrate judge. (Ct. Rec. 5).  After reviewing the

administrative record and the briefs filed by the parties, the

Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 20)

and **DENIES** Plaintiff's Motion for Summary Judgment. (Ct. Rec. 16).

## JURISDICTION

On June 19, 1998, Plaintiff protectively filed an application for SSI disability benefits. (Administrative Record ("AR") 131-134). The application was denied initially and on reconsideration. (AR 106-109, 112-114.) The first hearing on Plaintiff's claim was held on December 15, 1999. (AR 54-103). In a decision dated December 29, 2000, the ALJ denied plaintiff's claim. (AR 25-48). Following an appeal, the Court granted Plaintiff's Motion for Summary Judgment and remanded for further proceedings. (AR 1329-1349).

Plaintiff also filed for benefits on March 13, 2001. (AR 1001-1003). Following a second hearing held on November 4 and November 13, 2002 (AR 1473-1519, 1521-1576), this claim was also denied by an ALJ on October 10, 2003. (AR 1309-1319, 634 n. 1). While a request for review of the second application was pending before the Appeals Council, an ALJ conducted a third hearing on November 13, 2003, pursuant to the Court's remand order. (AR 1523-1575). In a decision dated November 22, 2004, the ALJ found that plaintiff was disabled as of September 5, 2003, but not as of June 19, 1998, as she alleged.[1] (AR 638). The ALJ found that from June 19, 1998 until September 4, 2003, plaintiff was able to perform her past relevant work as a teacher and as a secretary and therefore was not disabled during this time. (AR 638-639). The Appeals Council consolidated both applications and refused to

---

[1]Plaintiff alleged an onset date of September 1, 1997. (AR 131). In her March 16, 2001 application, she alleged disability as of September 1, 1998. (AR 1001, 1010). At AR 1010, plaintiff states her onset date was "early or mid-part of 1998." The parties now agree that the protective filing date of November 19, 1998 is the correct date to use as the date of onset for purposes of determining eligibility for disability.

assume jurisdiction because the partially favorable decision
resolved both claims. (AR 1385-1386, 612-616). Therefore the third
ALJ decision became the final decision of the Commissioner, which
is appealable to the district court pursuant to 42 U.S.C.
§ 405(g).  Plaintiff filed this action for judicial review
pursuant to 42 U.S.C. § 405(g) on April 13, 2006.  (Ct. Rec. 1).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing
transcripts, the ALJ's decisions, the briefs of both plaintiff and
the Commissioner and will only be summarized here.

Plaintiff was 55 years old on the date of the most recent
ALJ's decision. (AR 633).  Her educational background includes
attending four years of college and earning a bachelor's degree in
the Philippines. Plaintiff majored in English. (AR 62-63).  From
1990 to 1992, plaintiff earned an associates degree in Human
Services at Spokane Falls Community College. (AR 62). Her past
relevant work consists of teaching English as a second language in
Korea and working as a secretary. (AR 66, 72-73).  Plaintiff
alleges disability since June 19, 1998, due to low back and joint
pain, foot pain, shingles and depression/feelings of loneliness.
(AR 131-134,140). Plaintiff also alleged right shoulder injury,
imbalance and poor memory. (AR 1010).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as
the "inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past.  If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity ("RFC") assessment is considered.  If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the

determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal

standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### ALJ'S FINDINGS

The ALJ found at step one that plaintiff has not engaged in substantial gainful activity during the relevant period of time. (AR 633). At step two, the ALJ incorporated the findings of the previous two ALJ's decisions with respect to plaintiff's impairments. (AR 634, 636). He found that plaintiff suffers from the severe impairments of musculoskeletal pain, mental impairment, and psoriasis. (AR 636). The ALJ found that prior to September 5, 2003, plaintiff did not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments.[2]  (AR 636).

The ALJ concluded that plaintiff had the RFC to perform a limited range of light exertion work.  (AR 638).  He specifically found that, prior to September 5, 2003, plaintiff was limited to lifting up to 20 pounds occasionally and 10 pounds frequently; she could not work at or above shoulder level on the right side. (AR

---

[2] The ALJ found that as of September 5, 2003, plaintiff's skin impairment met the criteria of section 8.05 of the impairments listed in Appendix 1, Subpart P of the regulations (20 CFR, Part 404). (AR 636). The ALJ observed that on September 5, 2003, plaintiff was admitted to the hospital with a fever, skin eruptions and pustules on her lower extremities and abdominal wall. She was diagnosed with dehydration and pustular psoriasis pyodermal and discharged ten days later. (AR 634-635).

638).  The ALJ incorporated the findings of the previous two ALJ
decisions with respect to plaintiff's mental impairments, and
found that plaintiff's mental impairment results in a mild
restriction of the activities of daily living, mild difficulties
in maintaining social functioning, and moderate deficiencies of
concentration, persistence or pace, each of extended duration, and
no episodes of decompensation. (AR 636). The ALJ found that these
limitations precluded plaintiff's  ability to engage in work
requiring quotas or prolonged concentration. (AR 638).

At step four of the sequential evaluation process, the ALJ
found that plaintiff retained the RFC to perform her past relevant
work as a secretary or teacher. (AR 638).  Accordingly, the ALJ
determined at step four of the sequential evaluation process that
plaintiff was not disabled within the meaning of the Social
Security Act prior to September 5, 2003.  (AR 638).

<u>**ISSUES**</u>

Plaintiff contends that the ALJ erred as a matter of law.
Specifically, she argues that the ALJ erred by (1) relying on the
opinion of Jay M. Toews, Ed.D.; (2) finding plaintiff not fully
credible; (3) determining her RFC; and (4) finding that plaintiff
is able to perform her past relevant work. (Ct. Rec. 17, p. 35).

The Commissioner responds that the ALJ's decision finding
that plaintiff was not disabled until September 5, 2003, is
supported by substantial evidence and free of legal error. (Ct.
Rec. 21, p. 7).

## DISCUSSION

**A.  Dr. Toews' opinion**

Plaintiff contends that the ALJ erred by relying on Dr. Toews' report because it fails to meet professional standards. She also contends that the ALJ improperly relied on the report to discredit plaintiff's physical complaints. (Ct. Rec. 17, pp. 35-37). The Commissioner responds that: (1) Dr. Toews' opinion of highly probable malingering met professional standards; (2) a clinical diagnosis of malingering is not required when assessing credibility, and (3) the ALJ could properly infer that the lack of credibility shown by probable malingering undermines the veracity of plaintiff's claims of physical pain. (Ct. Rec. 21, pp. 8-12).

In the most recent ALJ decision (entered November 22, 2004), Richard Hines observed that the Court's June 4, 2003 remand order instructed the Commissioner to provide plaintiff's counsel with Dr. Toews' raw data for review, and to hold a supplemental hearing where plaintiff's counsel could cross-examine Dr. Toews. (AR 632).

ALJ Hines noted that on November 13, 2003, at the supplemental hearing, Dr. Toews provided the raw data from his July 7, 2000 examination of plaintiff and was subject to cross-examination. (AR 634, 637).  The ALJ noted Dr. Toews' testimony in response to questioning from plaintiff's counsel that he did not find every claimant to be malingering, that he examined but did not treat plaintiff, and he observed no lack of cooperation. ALJ Hines observed that Dr. Toews diagnosed plaintiff as highly probable for malingering based on the results of the following tests: the Portland Digit Recognition Test, the Trailmaking A, the elevated MMPI-2 and the Wexler Memory Scale -III. (AR 637). The

ALJ took note of Dr. Toews' acknowledgment that there was no way to be certain that plaintiff was malingering, and that the record contains no other indication of malingering.  ALJ Hines noted that Dr. Toews based his opinion on the objective findings. (AR 637). The ALJ observed Dr. Toews' testimony that he read all of the plaintiff's files that he received, his opinion was not based on plaintiff's race, and the secondary gain plaintiff may have been seeking could be something more than money, such as attention, affection, nurturing, support or avoidance. ALJ Hines pointed out Dr. Toews' testimony that his MMPI test result was the only one in the record. (AR 637).  The ALJ specifically stated that he based his credibility assessment of plaintiff (more fully outlined below) on more than Dr. Toews' finding of probable malingering. (AR 637).  ALJ Hines also assessed credibility based on plaintiff's failure to follow through with physical therapy for back pain; on her refusal to implement a physical fitness program to benefit back pain and fibromyalgia; on her ability to fly from Washington to Texas despite testifying that she can only sit for 5 minutes;[3] on her ability to drive; and on progress notes related to treatment for depression indicating that she was functioning fairly well and participating in various activities. (AR 637). As indicated, in the most recent decision the ALJ incorporated the findings of the previous two ALJ decisions.

Plaintiff contends that the ALJ erred by crediting Dr. Toews' report because it does not meet professional standards. Plaintiff cites 20 C.F.R. § 416.919n(b): "The conclusions in a consultative

---

[3]The ALJ noted that plaintiff had again been able to fly to Texas from Washington. She had flown to Texas in 2001. (AR 1316).

examination report 'must conform to professional standards.'"
(Ct. Rec. 17, p. 36). Plaintiff argues that to properly diagnosis
malingering, preliminary evidence of suspected malingering must be
confirmed by appropriate additional testing. (Ct. Rec. 17, p. 36).
As support plaintiff cites a November 19, 2000, letter by Andrew
Haffey, Ph.D., stating: "in my opinion, the diagnosis of
malingering carries a large burden of proof. I believe that the
community standard . . . has evolved to demand multiple
observations of the individual, gathering of collateral
information from sources other than medical professionals and the
exhaustive ruling out of other disorders such as a somatoform
disorder or a factitious disorder such as Munchausen's syndrome."
(AR 603).

     Plaintiff cites W. Scott Mabee, Ph.D.,'s October 29, 2003
letter as further support for discrediting Dr. Toews' report. (Ct.
Rec. 17, p. 36, AR 767-768).  The ALJ observed that Dr. Mabee
opines, in essence, that the diagnosis of malingering is difficult
to make and not always reliable, and Dr. Toews' diagnosis is based
on limited evidence and was not confirmed by a subsequent adequate
assessment. (AR 635, AR 769).

     The test of *Cotton v. Bowen*, 799 F. 2d 1403 (9th Cir. 1996),
requires that a plaintiff produce objective medical evidence of
impairments and show that the impairments could reasonably be
expected to produce some degree of the alleged symptoms. The ALJ
may then reject the plaintiff's testimony only upon (1) finding
evidence of malingering, or (2) expressing clear and convincing
reasons for doing so. *Cotton*, 799 F. 2d at 1407. Absent evidence
of malingering, an ALJ is required to state which symptom

testimony is found not credible with enough specificity to allow a

reviewing court to confirm that the testimony was rejected on

permissible grounds and not arbitrarily. *See Benton*, 331 F. 3d

1030, 1040-1041 (9th Cir 2003).

It is the ALJ who determines credibility and resolves

conflicts and ambiguity in the medical and non-medical evidence.

*Morgan v. Comissioner*, 169 F.3d 595, 599 (9th Cir. 1999).  When

reviewing the ALJ's decision, the Court must uphold the decision

if the findings of fact are supported by substantial evidence.

*Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42

U.S.C. § 405(g)).  Moreover, the Court must ultimately uphold the

ALJ's decision where the evidence is susceptible to more than one

rational interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989).  It is not the role of the Court to second-guess

the ALJ.  If evidence supports more than one rational

interpretation, the court must uphold the decision of the ALJ.

*Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

The undersigned judicial officer finds that the ALJ properly

considered Dr. Toews' report. Plaintiff fails to establish that

Dr. Toews' conclusions are not in conformity with professional

standards.  With respect to the opinions of Drs. Haffey and Mabee

that additional tests were required before diagnosing malingering,

Dr. Toews testified that although other tests similar to the

Portland Digit Recognition are available, they are all forced

choice tests and he does not know anyone who uses all of them. (AR

1538). The record reveals that the ALJ carefully considered the

opinions of Drs. Haffey, Mabee and Toews and found that Dr. Toews'

assessment was only one of numerous reasons that he found

plaintiff less than fully credible. (AR 635, 637).

Plaintiff argues that even if the ALJ could properly consider Dr. Toews' opinion of probable malingering, it was improper to use it to discount the severity of plaintiff's physical symptoms. (Ct. Rec. 17, pp. 36-37). The Commissioner responds that the ALJ could properly consider the evidence of probable malingering as impugning plaintiff's credibility with respect to claimed physical limitations. (Ct. Rec. 21, pp. 11-12).  When weighing the claimant's credibility, the ALJ may consider at least the following factors: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas v. Barnhart*, 278 F. 3d 947, 958-959 (9th Cir. 2002), *citing Light v. Soc. Sec. Admin.*, 119 F. 3d 789, 792 (9th Cir. 1997). The *Thomas* court affirmed the ALJ's credibility determination, finding that, in addition to no objective medical evidence supporting Ms. Thomas' descriptions of her pain and limitations, the ALJ properly relied on her ability to perform household chores such as cooking, laundry, washing dishes and shopping, and on her history as an unreliable historian with respect to substance abuse. The Court noted that the ALJ inferred "that this lack of candor carries over to her description of physical pain." The Court noted that even more compelling was the ALJ's finding that plaintiff failed to give maximum or consistent effort during two physical capacity evaluations, interpreted by the ALJ as arguing "strongly as to her lack of

credibility." *Thomas*, 278 F. 3d at 959.

Similarly, the ALJ in this case properly considered plaintiff's responses to the tests administered by Dr. Toews, along with other evidence discussed herein, when he determined that plaintiff was less than fully credible in her complaints of pain and in the degree of limitation she described.

**B.  Plaintiff's Credibility**

Plaintiff argues that the ALJ erred by failing to present clear and convincing reasons for rejecting her testimony.  (Ct. Rec. 17, pp. 37-40).  The Commissioner responds that the ALJ properly relied on Dr. Toews' finding of probable malingering, plaintiff's activities of daily living, her inconsistent subjective complaints and descriptions of limitations, and inconsistent follow through with treatment recommendations when he assessed credibility. (Ct. Rec. 21, pp. 8-18).  It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Plaintiff contends that the ALJ failed to make adequate credibility findings because he failed to cite to the record with respect to each finding. (Ct. Rec. 17, p. 38). The Commissioner responds that as long the ALJ refers generally to a basis in the record sufficient to permit review, the ALJ has satisfactorily identified the evidence undermining plaintiff's complaints. (Ct. Rec. 21, pp. 13-15).

In this case the ALJ incorporated by reference the findings of the two prior ALJ decisions, the first issued on December 29, 2000 by ALJ Paul Gaughan, and the second issued on October 10, 2003 by ALJ Richard Hines. (AR 634, 636). In the third and current credibility assessment, ALJ Hines stated that he also relied on plaintiff's failure to follow through with physical therapy and failure to implement a fitness program as recommended; on her ability to again fly from Washington to Texas despite testifying that she can only sit for 5 minutes; on her ability to drive; on progress notes indicating she was functioning fairly well with respect to her depression; and on plaintiff's participation in various activities. (AR 637). Although plaintiff is correct that the ALJ does not provide specific record references for each of these bases for his credibility determination, each reason has support in the record sufficient for review. Plaintiff failed to follow through with physical therapy and refused to implement a physical fitness program despite medical advice that she do so. (AR 1316)(October 10, 2003 decision). Plaintiff again flew to Texas despite testifying that

she can only sit for 5 minutes. (AR 1316) (October 10, 2003 decision).  Plaintiff participated in a variety of activities, including cooking, cleaning, doing laundry, driving, gardening and watching television.  (AR 1316)(October 10, 2003 decision). By incorporating findings from past decisions which included citations to the record, and by giving specific reasons supported in the record for his credibility determination, the ALJ has provided reasons sufficient for review.

Plaintiff next contends that the ALJ's reasons, even if located in the record, are legally insufficient. (Ct. Rec. 17, pp. 38-40). The Commissioner responds that plaintiff only points to two allegedly improper considerations with respect to the credibility determination: the lack of follow through with treatment and plaintiff's daily activities. (Ct. Rec. 21, pp. 15-18).  The Commissioner responds that the ALJ properly considered both factors and both are supported by the record. (Ct. Rec. 21, pp. 15-16).  The Commissioner adds that the evidence the ALJ relied on but not challenged by plaintiff also supports the ALJ's credibility determination. (Ct. Rec. 21, pp. 18).

As noted previously, the ALJ considered the plaintiff's failure to follow through with physical therapy for her back pain and failure to implement a physical fitness program to benefit her back pain and fibromyalgia as damaging to her credibility. (AR 637). Plaintiff argues that the ALJ cannot make a negative credibility inference based on a lack of treatment without first considering the claimant's explanation for the lack of treatment, and in this case he did not ask her for an explanation. (Ct. Rec. 17, p. 39), citing SSR 96-7p.  The Commissioner observes that the

amount of treatment is "an important indicator of the intensity
and persistence of [Plaintiff's] symptoms." (Ct. Rec. 21, p. 15),
citing C.F.R. § 416.929(c)(3).

Even if the ALJ improperly relied on plaintiff's lack of
follow through with respect to physical therapy and a physical
fitness program, the error is harmless because the other reasons
relied upon by the ALJ are proper and are supported by substantial
evidence.[4]

The ALJ observed that plaintiff's daily activities were
inconsistent with her alleged limitations. (AR 637). This
observation was based on plaintiff's ability to fly to Texas even
though she testified that she is only able to sit for 5 minutes.
Plaintiff had the ability to drive, as evidenced by the purchase
of a new car. Medical records showed that plaintiff's foot
problems were successfully corrected with surgery. There was no
evidence showing that plaintiff needed a wheelchair or help with
her daily activities until September 2003 when her psoriasis
became severe. (AR 637). The Commissioner notes that by the
incorporation of prior decisions, plaintiff's activities also
included bicycle riding. (Ct. Rec. 21, p. 16, AR 1314, 1316, 28,
33).

The ability to perform household activities bears on a
claimant's credibility only to the extent that the level of
activity is inconsistent with claimed limitations. *See Reddick v.
Chater*, 157 F. 3d 715, 722 (9th Cir. 1998). In this case the ALJ

---

[4]An error is harmless when the correction of that error would not alter
the result. *See Johnson v. Shalala*, 60 F. 3f 1428, 1436 n. 9 (9th Cir. 1995).
Further, an ALJ's decision will not be reversed for errors that are harmless.
*Burch v. Barnhart*, 400 F. 3d 676, 679 (9th Cir. 2005)*citing Curry v. Sullivan*,
925 F. 2d 1127, 1131 (9th Cir. 1991).

properly relied on substantial evidence of activities which were inconsistent with plaintiff's claimed limitations.

A number of very specific reasons supporting the ALJ's credibility findings were set forth in both the December 29, 2000 and the October 10, 2003 decisions which were by reference adopted by and incorporated in the current decision. (AR 634, 636). Plaintiff's inconsistent descriptions of her symptoms and limitations undermined her credibility. The first ALJ noted that plaintiff testified to shoulder problems without acknowledging improvement after surgery, which weakened her general credibility. (AR 39). The first ALJ found plaintiff's testimony that she could only stand or walk for 15 minutes inconsistent with her June 1998 application that merely stated that she could not stand or walk for long periods of time. (AR 39).  The second decision, by ALJ Hines, notes that "[a]lthough the claimant has reported an inability to sit, stand and walk through the day, she evidences no muscle wasting, strength loss, or atrophy on examination" as would be expected. (AR 1316).

As noted, when an ALJ assesses credibility, he may consider plaintiff's daily activities, such as the ability to perform household chores, as a specific and convincing reason to discount subjective complaints which are not consistent with that activity level. *See Morgan v. Commissioner*, 169 F. 3d 595, 599-600 (9th Cir. 1999).  Evidence of probable malingering is another factor properly supporting the ALJ's credibility determination. *See Tonapetyan v. Halter*, 242 F. 3d 1144, 1148 (9th Cir. 2001)(a tendency to exaggerate is a legitimate consideration in determining credibility). Even under the clear and convincing

standard of review, the ALJ's determination that plaintiff is less than completely credible is fully supported by the record.

**C.   RFC**

Plaintiff next contends that the ALJ erred by failing to specify the medical evidence relied upon in determining her residual functional capacity ("RFC). (Ct. Rec. 17, pp. 40-41). Plaintiff argues, without any reference to the administrative record, that the ALJ improperly rejected the opinions of her treating health care providers and that no evidence supports the RFC determination. (Ct. Rec. 17, pp. 40-41).   The Commissioner responds that the ALJ based plaintiff's RFC on a consideration of the record as a whole, and because that evidence is substantial and supports the RFC, there was no error.  (Ct. Rec. 21, pp. 18-19).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition.  *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is given to a treating physician than an examining physician.  *Lester*, 81 F.3d at 830.  Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians.

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion.  *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43.  "An ALJ may reject the testimony of an

examining, but nontreating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)(citation omitted).

In the most recent decision the ALJ determined that, from June 1998 until September 5, 2003, plaintiff had the residual functional capacity to lift no more than 10 pounds frequently or more than 20 pounds occasionally. Plaintiff could not work overhead on the right side, and could only occasionally stoop. (AR 638). Plaintiff's moderately limited ability to maintain concentration, persistence or pace precluded work requiring quotas or prolonged concentration. The ALJ found that plaintiff was thus precluded from work requiring more than a limited range of light exertion. (AR 638).

The ALJ based this RFC, in part, on the evidence relied on by the first ALJ, Paul L. Gaughan. The first hearing was held December 28, 1999, approximately one year after the alleged onset date of November 1998. ALJ Gaughan issued his decision on December 29, 2000.  The ALJ incorporated these findings by reference into the current decision. (AR 25-48; 634, 637).

In the first decision ALJ Gaughan determined that plaintiff's RFC limited her to lifting or carrying 20 pounds occasionally and not more than 10 pounds frequently, with no working at or above shoulder level on the right. (AR 29).  ALJ Gaughan based this RFC on the following:

Plaintiff testified that she has carpel tunnel syndrome on the right with accompanying numbness, but she told Dr. Lin [a

treating physician] in September 1999 that she had no difficulty driving and only occasionally dropped items. (AR 29-30, 547). Plaintiff testified that she can lift 10 pounds. (AR 29-30). Electrodiagnostic evidence interpreted by Dr. Lin showed only mild to moderate carpel tunnel syndrome on the right. (AR 31, 547). The results of Dr. Damon's examination in September 2000 showed good grip strength in both hands and full range of motion in the elbows, hands and fingers bilaterally. (AR 32, 587). Plaintiff's testimony that she cannot lift more than ten pounds in part because of her history of a right rotator cuff tear is inconsistent with treatment notes showing a good response to surgical repair. (AR 39, 238, 479, 483-484). The orthopedic specialist seen by plaintiff for her right hand complaints recommended no more than an injection and a brace to wear at night. (AR 42, 547). The ALJ noted that, although plaintiff's right shoulder injury required surgery, her surgeon referred her for only two to six therapy sessions because she was doing well with home exercises. The surgeon opined that "she will be able to return to work in the fall as a teacher." (AR 42, 484).

In the second decision (October 10, 2003), ALJ Hines noted that in September 1998 treating physician Marilyn Ream, M.D., told plaintiff that "her physical findings are not significant enough to allow her to have disability." (AR 1311) (citing AR 243). The ALJ pointed out Dr. Ream's opinion that plaintiff was able to perform sedentary work. (AR 1311)(citing 394). The ALJ again acknowledged plaintiff's March 1999 right shoulder open rotator cuff repair and acromioplasty. He observed that in February of 2001, plaintiff reported that she did well following the surgery

in 1999, until the past couple of months.  An ultrasound of the

right shoulder performed in February 2001 revealed a small

recurrent tear. Plaintiff was treated with injections without

followup. (AR 1311). In the second decision, ALJ Hines summarized

the evidence he relied on in determining plaintiff's physical RFC:

"It is noted that extensive testing, including brain, lumbar spine and cervical spine MRIs, x-rays, ENG, audiogram, and nerve conduction studies have evidenced no significant abnormalities. The claimant has reported good relief of foot symptoms with injections and treatment. Her shoulder condition was treated with surgery, without recurrence until February of 2001, when the claimant was treated with injections, without report of persisting symptoms. There is no evidence to support the claimant's reports of problems with vertigo or balance, and she did not undergo physical therapy suggested for persisting balance problems. The claimant's musculoskeletal complaints were considered to be attributable to "age-related joint problems" or fibromyalgia. (see Exhibit B-23F). [September 25, 2001 office note of J. Robert Clark, M.D., at AR 1194.] The claimant has a past history of mildly symptomatic right carpel tunnel syndrome, without evidence of persisting symptoms. The evidence establishes that the claimant suffers from foot impairment, right shoulder impairment, and generalized muskuloskeletal pain, considered together with her mental impairment which exacerbates her physical condition, precludes her ability to engage in work requiring lifting more than 10 pounds frequently or more than 20 pounds occasionally, working overhead with the right shoulder, or more than occasional stooping. In addition, the claimant's limited ability to maintain concentration, persistence or pace precludes her ability to engage in work activities requiring quotas or prolonged concentration. Accordingly, the undersigned finds that the claimant is unable to perform work requiring more than a limited range of light exertion. See, in accord, assessment of examining physician at Exhibit 45F. [September 11, 2000 exam by James E. Damon, M.D., at AR 586-588.] See, also, assessment of medical consultant at Exhibit B-10F. [May 22, 2001 agency assessment by Cindy Kurtzhall at AR 1099-1106.]

(AR 1317).

The RFC determination by ALJ Hines in the second decision

noted above is incorporated into the current (third) decision. As

is clear from the quoted portions of the second decision, the

prior decisions contain specific references to the medical

evidence of record. Plaintiff's argument that the current decision

does not provide a basis for review is unsupported by the record.

Plaintiff fails to point to specific evidence undermining the ALJ's residual functional capacity assessment.  With respect to plaintiff's severe impairment of musculoskeletal pain, the findings of the ALJs are fully supported by the record as noted herein. To the extent that plaintiff argues that the RFC with respect to her skin condition and depression were not properly considered, the undersigned notes that in the current decision the ALJ relied on the following:

1. Psoriasis

The ALJ found that plaintiff's skin disorder met the requirements of a Listed impairment as of September 5, 2003, but was not a disabling impairment before that time. (AR 636). In reaching this conclusion, the ALJ observed that, while the plaintiff had trouble with skin rashes on several occasions, "it responded to treatment and healed." (AR 637). In the first decision, ALJ Gaughan noted plaintiff's testimony "that she often has shingles which spread all over with a burning sensation and lasts up to 6 months," was inconsistent with the absence of chronic skin complaints in the record. (AR 40). ALJ Gaughan observed that after an outbreak on June 27, 1998, the condition was already partially resolved by July 1, 1998. (AR 40)(citing AR 179, 184).  The ALJ noted that it was not until September 1998 that plaintiff told Dr. Ream she thought the rash was returning but Dr. Ream's records reveal no further complaints of serious skin discomfort through April 1999. (AR 40)(citing AR 240-256). The ALJ further noted that records from another physician through September 1999 reflect complaints of rash like symptoms in one or two areas at a time and there is no mention of serious burning

pain all over. (AR 40)(citing records of Michael Ryan, M.D., AR
266-291).  Those records further indicated that after two weeks
the "rash has cleared completely." (AR 275).

    The most recent decision incorporates the detailed findings
of the prior decisions. ALJ Hines summarized plaintiff's skin
condition in the past as having responded to treatment and healed.
(AR 637). The record contains substantial evidence supporting the
ALJ's finding that prior to September 5, 2003, plaintiff's skin
condition was not a disabling impairment and did not result in
limitations.

    2. Mental Impairment

    The current ALJ's decision found that plaintiff suffers from
psychological factors affecting her physical condition. This
mental impairment results in a mild restriction of activities of
daily living, mild difficulties in maintaining social functioning,
and moderate deficiencies of concentration, persistence, or pace,
with the latter limitation precluding plaintiff's ability to
engage in work requiring quotas or prolonged concentration. (AR
636, 638).

    The ALJ indicated that the record supports the findings of
the prior decisions. He incorporates the prior ALJ decisions and
findings with respect to the opinions of Ronald Klein, Ph.D., who
testified at the second hearing, and of James Damon, M.D., and
James Bailey, Ph.D. (AR 1314-1315, 1476-1486, 586-588, 1107-1119).
Substantial evidence in the record supports the RFC finding with
respect to plaintiff's mental impairments.

    James Damon, M.D., examined plaintiff September 11, 2000.  He
noted that plaintiff brought a cane to the exam but did not use it

when walking around the room or getting on and off the examination table. Plaintiff had a "severe conviction of impairment." (AR 586-587). Dr. Damon opined that plaintiff's complaints far outweighed the objective findings.

On May 23, 2001, James Bailey, Ph.D., assessed plaintiff with only mild mental impairments. (AR 1117). Ronald Klein testified that plaintiff suffers from a pain disorder with psychological factors and a general medical condition not equal to a Listed impairment. (AR 1476-1482).  He opined that plaintiff is mildly limited in activities of daily living, mildly limited in maintaining social functioning, and moderately limited in maintaining concentration, persistence or pace. (AR 1478). Dr. Klein reviewed plaintiff's Weschler scores and noted that the memory scores from ranged from 65 to 102, meaning that they ranged from severely impaired to the middle of the average range. Dr. Klein opined that this is highly unusual and not seen in a neurologically intact individual. In the absence of stroke or traumatic brain injury, the results "suggest the possibility of inadequate effort, perhaps deliberate attempts to appear disabled." (AR 1479).  Dr. Klein reviewed plaintiff's scores on several other tests and also found them highly suggestive of inadequate effort and of a person trying to appear disabled. (AR 1478-1482). The ALJ appropriately relied on this medical evidence in determining plaintiff's mental RFC.

Contrary to plaintiff's general argument, the ALJs credited some of the opinions of her treating health providers when determining her RFC. Beginning with the first ALJ's decision, some of the findings of plaintiff's treating providers are credited.

ALJ Gaughan notes Marilee Manion, M.H.P.'s statement that when plaintiff sought treatment in August of 1998, she was depressed in large part because of a lack of job since returning to the United States from Korea; loneliness since returning; and also because of some health problems. Plaintiff said she had crying spells and was unable to concentrate or comprehend because of racing thoughts. (AR 35, citing AR 326). The ALJ notes that Ms. Manion reports on August 24, 1998, that plaintiff's mood was good. Her thought process was logical, progressive and goal directed. She was able to perform serial sevens, which the ALJ notes indicated intact concentration abilities. (AR 35, citing AR 330-333).

Similarly, the ALJ notes that plaintiff told treating physician Dr. Ream in June 1999 that she had right foot pain when getting up but it went away after walking a bit. (AR 30, citing AR 481). In each of the ALJ's decisions the opinions of treating, examining and consulting doctors are considered, weighed and discussed. The results of objective tests by many physicians are exhaustively reviewed by the ALJs. In each decision plaintiff's testimony is considered and discussed. In his current decision ALJ Hines reviewed the entire record and incorporated prior ALJ decisions and findings into his decision, and weighed plaintiff's credibility in light of the credited medical evidence, along with other appropriate factors. Based on the foregoing, the undersigned finds that the ALJ's determination of plaintiff's RFC is based on substantial record evidence and is free of legal error.

**D. Past Relevant Work**

Plaintiff contends that because the determination of her residual functional capacity is flawed, the ALJ's hypothetical to

the vocational expert ("VE") is unsupported by substantial evidence and must be set aside. (Ct. Rec. 17, pp. 41-42). The Commissioner responds that plaintiff fails to meet her burden of proving that she can no longer perform her past relevant work, and because the ALJ's finding was based on substantial evidence, it should be upheld. (Ct. Rec. 21, pp. 19-20).

At the administrative hearing held on November 4, 2002, vocational expert ("VE") Daniel McKinney testified that an individual with the same age, education, work experience and RFC identified in the ALJ's hypothetical[5] would be able to perform plaintiff's past relevant work as a teacher or secretary. (AR 1516).  As indicated herein, the ALJ's residual functional capacity analysis is free of legal error and supported by substantial evidence in the record. The hypothetical asked by the ALJ included all of the restrictions resulting from his RFC analysis. Accordingly, the ALJ appropriately relied on the VE's testimony in finding that plaintiff was able to perform her past relevant work during the applicable time frame.

Having reviewed the records and the ALJ's decision, this Court finds that the ALJ's decision is free from legal error and is based on substantial evidence of record.  Accordingly,

**IT IS ORDERED:**

1.   Defendant's Motion for Summary Judgment (**Ct. Rec. 20**) is **GRANTED.**

2.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 16**) is **DENIED.**

---

[5]The RFC to stand/sit for about 6 hours in an 8 hour day was assessed by agency consultant Cindy Kurtzhall on May 22, 2001. (AR 1100).

3.    Judgment shall be entered for **DEFENDANT**.

4.    The District Court Executive is directed to enter this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** the file.

**DATED** this 21st day of December, 2006.

                              s/Michael W. Leavitt
                        MICHAEL W. LEAVITT
                   UNITED STATES MAGISTRATE JUDGE